Edwin F. Krist and Marion R. Krist v. Commissioner.
Krist v. Commissioner
Docket No. 7665-70 SC
United States Tax Court
T.C. Memo 1972-100; 1972 Tax Ct. Memo LEXIS 160; 31 T.C.M. (CCH) 397; T.C.M. (RIA) 72100; April 27, 1972, Filed John J. Barnosky, 195 Willis Ave., Mineola, N. Y., for the petitioners. William J. Doherty, for the respondent. INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: The respondent determined a deficiency in the petitioners' Federal income tax for the calendar year 1967 in the amount of $612.96. The only issue before the Court is whether travel expenses totaling $1,763.50 are deductible as "ordinary and necessary expenses paid or incurred during the taxable year in carrying *161 on any trade or business", within the meaning of section 162(a) of the Code. [1]
Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners, Edwin F. and Marion R. Krist, are husband and wife, and resided in Floral Park, New York, at the time their petition was filed. They filed their joint Federal income tax return for the year 1967 with the Brooklyn, New York, District of the Internal Revenue Service. Marion R. Krist (hereinafter referred to as the petitioner) is an elementary school teacher. She has been so employed for 18 years. She has a Bachelor's Degree in 398 secondary education to teach English and speech and a Master's Degree in elementary education to teach grades K to 6. She is certified by the State of New York to teach grades K to 6. In 1967 and for seven years prior thereto, she taught the first grade at Barnum Woods School in the East Meadow District of Long Island, New York. Approximately one-half of the time in the first grade was spent teaching the traditional subjects of reading, writing, and arithmetic. The other *162 half was spent teaching science and social studies. The latter topic used a textbook entitled "Families and Social Needs". Some of the headings in the book were as follows: Unit One - Families In Our Country Unit Two - Where Families Live Unit Three - Maps and Clothes Unit Four - Families In Other Lands (a) In Japan
(b) In Switzerland
(c) In India
Unit Five - Houses In Other Lands (a) In Japan
(b) In Switzerland
(c) In India Sometimes the subjects taught overlapped. For example, reading might be combined with the use of a book about a Chinese family. In 1967, the petitioner applied to her superiors to take sabbatical leave from September 1, 1967, to June 30, 1968, for travel. Paragraph 14, Article VI of the Administrative Code for the East Meadow Schools, Long Island, New York, is as follows: 14. A teacher who has successfully completed at least seven years of satisfactory teaching service in the East Meadow School District shall be eligible to make application to the Superintendent of Schools for a sabbatical leave of absence of not more than one year. Generally speaking the approved purposes for a sabbatical leave of absence may be summarized as follows: *163 a. Approved travel that will broaden the background of the teacher's experience (itinerary submitted in advance). b. Graduate study related to teaching or school administration (full time). c. Recovery of health (documentation by either the personal or school doctor may be requested). Approved requests shall entitle the teacher to receive half pay during the time of the leave. Requests at any time shall be limited to approximately 2% of the total professional staff. While on sabbatical leave the teacher's total earnings for other work shall not exceed her annual school district salary inclusive of the half-pay received from the school district. When she applied for sabbatical leave, the petitioner discussed her trip with her supervisor and told him of her plans. She was required to write a report and to make a presentation to the faculty regarding her trip on her return. She was granted permission to take sabbatical leave by the school district and on September 22, 1967, she began her trip from New York City. Her itinerary and the cost allocable to her various activities as prepared by the petitioner are set forth below: Date
Travel Details
Amount
9/22/67
Belgian Line "SS Brenghel"
$ 209.00
10/ 4/67
Antwerp to Brussels - train
10/ 6/67
Air Brussels to London
10/ 8/67
Air London to Dublin]
46.00
10/11/67
Train Dublin to Limerick
10/14/67
Bus to Galway and Cong and return to Galway
13.00
10/19/67 &
Bus to Cahir, Waterford and train to Dublin
14.00
10/20/67
10/23/67
Air Dublin to London
18.20
10/4-27/67
Hotels
230.00
10/4-27/67
Tours, sight-seeing, factories, museums, etc.
60.00
10/27/67
Air London to Paris
26.32
10/27-30/67
Travel, hotels in Paris, Loire Valley, Pherims
50.00
10/31/67-11/20/67
Hotels, travel, tours through Cologne, Stuttgart, Munich, Vienna, Liechtenstein, Switzerland, Northern Italy, Genoa
200.00
11/20/67
Air Nice to Barcelona to Madrid
51.00
11/20-22/67
Pension tours
15.00
11/23/67
Train to Lisbon from Madrid
9.00
9.00
11/23-30/67
Travel, tours, hotels in and about Lisbon, Portugal
60.00
11/30/67
S/S Funchal to Madeira return trip to Lisbon 12/10/67
44.00
12/10-19/67
Further travel, tours, hotels Lisbon, Portugal
45.00
12/19/67
S/S Tourens Freighter Wilhelmsen Lines leaving Lisbon pro- ceeding around African Coast to Manila, Hong Kong, Korea, Japan 672.98
Total
$1,763.50
*164 399 Petitioner, with her husband, took a Belgian freighter from New York to Belgium. They both went to London and to Dublin where her husband left her on October 14, 1967. She then went to Galway where she spent four days planning the remainder of her trip. From then on, the petitioner was on her own, staying at second-rate hotels and visiting schools and families as well as general points of interest any tourist might seek out. She visited schools in London, Spain, Switzerland, and later in 1968 in Japan. During her trip, the petitioner took hundreds of dollars worth of picture slides. The petitioner testified that her purpose in taking the trip was to aid her in her work as a teacher. She noted that had she been on vacation she would not have used freighters, she would have stayed at better hotels, and her activities would have been geared to swimming and skiing rather than the travel and visits she made which tired her each day. Some of the ideas and materials the petitioner brought back from her trip were used by her when she returned to her teaching job. After her trip, the superintendent of schools for petitioner's district certified that she had "completed the program *165 for which she was granted leave" and that "The travel was undertaken for professional improvement in order to enhance her teaching skills * * *." Opinion Section 162(a)(2) allows a deduction for "all the ordinary and necessary expenses paid * * * during the taxable year in carrying on any trade or business, including * * * traveling expenses * * * while away from home in the pursuit of a trade or business." Because the law itself is necessarily broad, the regulations promulgated under it are especially important. They were first set forth in T.D. 6291, filed April 3, 1958. [2] They provide in essence, that education expenses (including travel such as is involved here) are deductible if the activity was either undertaken primarily to maintain or improve a taxpayer's job skills or to meet requirements the employer imposed for the taxpayer to retain his salary or status. They also provide that expenditures for travel (including travel while on sabbatical leave) are generally personal and therefore not deductible. However, the rule as to sabbatical leave was liberalized by the Commissioner in Rev. Rul. 64-176, C.B. 1964-1 (Part I) 87. [3] It recognizes that *166 sabbatical leave travel expenses may be deductible even though it is of the "broadening, cultural type, which is generally considered to yield only a personal advantage," if at the same time it "has a direct relationship to the conduct of the individual's trade or business." *167 The regulations under section 162 were later revised on May 1, 1967, by T.D. 6918 (effective on or after January 1, 1968). [4] In the new regulations, the "primary purpose" test used in the old regulations has been eliminated and the expense is deductible if it maintains or improves a taxpayer's job 400 skills and is directly related to a taxpayer's trade or business. *168 For years prior to 1968, taxpayers may rely alternatively on either the 1958 or the 1967 regulations. Stanley Marlin, 54 T.C. 560 (1970); Burke W. Bradley, Jr., 54 T.C. 216 (1970); Ronald F. Weiszmann, 52 T.C. 1106 (1969). So here, the petitioner must show either that her primary purpose in taking the sabbatical leave travel was to maintain and improve her skills as a teacher (and, under Rev. Rul. 64-176, supra, that it was directly related to her job) or that it did maintain and improve her skills and was directly related to her duties. In a concise and well-written brief, the respondent argues that the petitioner's travel only incidentally maintained or improved her teaching skills and that a major portion of her activities did not directly maintain or improve her skills. The question presented is a factual one and there is little doubt but that one experiences difficulty in drawing a line of demarcation which places all the personal activities on one side and all the business-related activities on the other. There is an overlapping which is dictated by the nature of the activity itself. Nevertheless, we think the record here *169 clearly supports the conclusion that the petitioner's primary purpose in taking the trip was to maintain or improve her skills and that the majority of her activities were directly related to her teaching job. The petitioner testified that she did not plan the trip as she would a vacation and that much of what she did was in the nature of work to her. We believe her testimony. She was obviously dedicated to the teaching profession and to the children she taught. Her testimony was forthright and unhesitating. When one relates her statements to the fact that she traveled for the most part alone, without her husband, that she did visit schools and families, that she did adopt teaching techniques she observed, that she brought back a great number of slides which she used at the school, that her mode of transportation and her accommodations were inferior to that of the normal tourist - they are consistent with the conclusion that she took the trip primarily to maintain and improve her skills. As to the direct relationship of her activities to her job, she taught social science (which includes geography, history, study of customs and culture, etc.) to her pupils. The textbook she used contained *170 specific references to some of the places she visited and to the facilities and customs she was able to observe. We do not think the rulings and case law which refer to "general cultural improvement" are controlling here. Rather, we believe this petitioner was in the same situation as was the petitioner-wife in Stanley Marlin, supra, where the Court found a direct relationship between the wife's occupation as a history teacher and her visits to places of historic interest even though she was accompanied by her husband. So here, we believe a portion of the petitioner's expenses for travel were deductible under either the old or new regulations. We believe that a portion of the petitioner's trip, such as some of the time spent with her husband, involved personal expenditures. We must make an allocation between those expenditures and those which are business related. Reuben H. Hoover, 35 T.C. 566 (1961). [5] On the basis of the entire record, we hold that 80 percent of the amount claimed, or $1,410.80, is deductible under section 162(a) 401 as a business expense, and 20 percent, or $352.70, is nondeductible personal expense under section 262. Cohan v. Commissioner, 39 F. 2d 540 *171 (C.A. 2, 1930).
Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise indicated.↩
2. Sec. 1.162-5 Expenses for education. - (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. * * * (c) In general, a taxpayer's expenditures for travel (including travel while on sabbatical leave) as a form of education shall be considered as primarily personal in nature and therefore not deductible. ↩
3. Travel which has a direct relationship to the conduct of the individual's trade or business, even though it may also be of the broadening, cultural type, which is generally considered to yield only a personal advantage, may under certain circumstances be treated as the equivalent of education the cost of which may be deductible under section 1.162-5(a) of the regulations. For example, if a teacher of French, while on sabbatical leave granted for the purpose of travel, journeys throughout France in order to improve his knowledge of the French language, the expenses of his travel (including transportation and expenses necessarily incurred for meals and lodging) are deductible as education expenses if the taxpayer can show that his itinerary was chosen and the major portion of his activities during the trip was undertaken for the primary purpose of maintaining or improving his skills in the use and the teaching of the French language and that the places visited and his activities were of a nature calculated to result in actual or potential benefit to him in his position as a teacher of French. This is true even though his activities while traveling may consist largely of visiting French schools and families, attending motion pictures, plays or lectures in the French language, and the like.↩
4. Sec. 1.162-5 Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. * * * (d) Travel as a form of education. Subject to the provisions of paragraph (b) and (e) of this section, expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position.↩
5. See also Helen V. Oehlke, T.C. Memo. 1967-144; Alan Thomas James, T.C. Memo. 1964-49; Sid Neschis, T.C. Memo. 1963-191↩.