CAROL J. COCHRAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cochran v. Commissioner
Docket No. 4749-71.
United States Tax Court
T.C. Memo 1973-104; 1973 Tax Ct. Memo LEXIS 183; 32 T.C.M. (CCH) 466; T.C.M. (RIA) 73104; April 30, 1973, Filed *183 Held, the expenses incurred by a second-grade teacher on a trip around the world are not deductible as ordinary and necessary business expenses. Carol J. Cochran, pro se. Harry Morton Asch and William E. Saul, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The respondent determined a deficiency of $1,012.87 in the petitioner's Federal income tax for 1967. The only issue for decision is whether the 2 expenses incurred by the petitioner, a teacher of second grade, on an around-the-world trip constitute ordinary and necessary business expenses. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Carol J. Cochran, maintained her legal *184 residence in Palo Alto, California, at the time her petition was filed in this case. She filed her 1967 individual Federal income tax return with the internal revenue service center, Ogden, Utah. In 1952, the petitioner graduated from the University of California with a bachelor of arts degree in history, and in 1953, she became an accredited teacher, certified by the State of California as an elementary school teacher for kindergarten through eighth grade. After teaching second and third grade for 4 years, the petitioner, in 1957, accepted a teaching position with the Palo Alto Unified School District (the school district) and taught second, third, and fourth grade until 1964, when she began to teach only second grade. In February 1966, the petitioner applied to the school district for a sabbatical leave to tour the world. 3 On her application, she listed the countries which she planned to visit during the period from September 1966 through June or July 1967 and stated that "[where] it is possible I intend to visit schools and observe classes as well as take pictures for the school district." The petitioner's application was voluntary on her part and not required by the *185 school district or any law or regulation. The application was approved. In 1966, the requirements of the school district concerning sabbatical leave provided that such leave was ""for the purpose of permitting study or travel * * * which will benefit the schools and the pupils of the district."" A teacher could request sabbatical leave only after 7 years of continuous service, and the compensation for such leave was one-half of the teacher's basic salary. A teacher on sabbatical leave for travel was required to remain in travel status for at least 4-1/2 months for each semester of leave granted and, within 60 days after the conclusion of his trip, to file with the school district a written report of not less than 2,500 words "setting forth the teacher's reactions to the trip and a statement of the benefits received from it." As the result of traveling, a teacher could earn units which are utilized in determining salary increments above the base scale and in determining 4 retirement benefits. However, a teacher could not earn more than 18 such units as the result of travel, and since the petitioner had already received 18 units for travel across the United States, in South America, *186 and in Africa, she was allowed no units for her trip around the world. On June 17, 1966, the petitioner signed a sabbatical agreement which provided that she would receive a salary of $6,245.00 during her sabbatical leave for the 1966-1967 school year. In consideration of such salary, the petitioner agreed to take her trip and to return to the school district "upon expiration of the sabbatical leave of absence and to render two years service therein." The grade which the petitioner was to teach upon her return was not specified, and the petitioner did not know what grade she would teach on her return. On September 21, 1966, the coordinator of the Instructional Materials Center of the school district gave the petitioner a letter of introduction to present on her travels. The Instructional Materials Center is a repository for supplementary texts and instructional materials to support the school district's instructional programs. The petitioner began her trip on September 25, 1966, with an approximately 18-day cruise to New Zealand, where 5 she stayed for 25 days. She then traveled to Australia, where she stayed for 20 days before going on to Asia. While in Asia, the petitioner *187 visited Malaysia, Thailand, Cambodia, Hong Kong, Burma, India, Nepal, Ceylon, Pakistan, Afghanistan, Iran, Lebanon, Syria, Jordan, Israel, Cyprus, and Turkey. She also visited Greece, Yugoslavia, Italy, Austria, Eastern Europe, the Soviet Union, Germany, Spain, Portugal, and Canada before arriving home on August 5, 1967. The petitioner's trip was not part of a group tour. During her trip, the petitioner maintained an extensive diary which discussed the places she visited, various meals she ate, the entertainment and dancing which she enjoyed, the items which she purchased, and the people, mostly other travelers, whom she met. There were no apparent references in such diary to any teaching methods which she learned on her trip. The diary did contain references to the petitioner's having a television interview and a newspaper interview in New Zealand, in which she spoke about California schools, and to her visiting schools during part of 2 days in New Zealand and during part of 2 other days in Australia. The visits to the schools in New Zealand and Australia were the only school visits which the petitioner had planned before taking her trip. On the remainder of the trip, the petitioner, *188 6 according to her diary, visited the grounds and buildings of 7 schools and universities, and passed by the grounds and buildings of 6 others. She also unsuccessfully tried to visit schools in Yugoslavia and the Soviety Union. None of her school visits lasted more than a morning or an afternoon or a part thereof. The petitioner took over 1,000 slide photographs on her trip and donated 350 of them to the school district. She also purchased over 130 items, valued at approximately $1,200, and donated 24 of the items to the school district. After her return to Palo Alto, the petitioner submitted her post-sabbatical leave report, which contained brief descriptions of most of the countires which she visited. In the report, she also stated that she benefited from her trip "because I have a new and fresh approach to teaching." In the fall of 1967, the petitioner resumed teaching second grade. Both prior to and after the petitioner's sabbatical travel, the subjects taught in the second grade were reading, language arts (including writing), arithmetic, health and physical education, sicence, social science and Spanish. The core of the social science course was devoted to the study *189 of local communities, including Palo Alto. 7 There were no textbooks for such course, but there were pamphlets dealing with the local community, Palo, Alto, and State of California materials dealing with how man meets his basic needs, none of which had any specific references to foreign nations. Courses dealing with the history, geography, economics, and sociology of foreign countries were not part of the curriculum until grades higher than the second grade. However, teachers were encouraged to share unusual experiences with their students, and one second-grade teacher, who had been to Japan, shared her experiences in Japan with her students. On her 1967 Federal income tax return, the petitioner claimed an additional expense deduction for the $5,283.87 of expenses which she incurred on her trip during 1967. Such deduction was disallowed by the respondent. OPINION The issue for decision is whether the expenses incurred by the petitioner on an around-the-world trip constitute ordinary and necessary business expenses. Section 162(a) of the Internal Revenue Code of 1954 allows a deduction for "all the ordinary and necessary expenses paid * * * during *190 the taxable year in carrying on any trade or business * * *." The income tax regulations under section 8 162, which were promulgated in 1958, provided that expenditures for travel for education are deductible only if the trip was undertaken primarily to maintain or improve skills required in the taxpayer's employment. Sec. 1.162-5(d), Income Tax Regs. The regulations promulgated in 1967 changed the test of the earlier regulations and provide that : expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an individual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business * * * [Sec. 1.162-5(d), Income Tax Regs.] For taxable years prior to 1968, the taxpayer may rely on either *191 the 1958 or 1967 regulations ( Stanley Marlin, 54 T.C. 560, 563 (1970); James A. Carroll, 51 T.C. 213, 219 (1968), affd. 418 F. 2d 91 (C.A. 7, 1969)), but it is clear that if a taxpayer fails to satisfy the requirements of the new regulations, he will not satisfy the test for deductibility under the old regulations. Stanley Marlin, supra at 54 T.C. 565. 9 The determination of whether the major portion of the petitioner's activities on her trip directly maintained or improved skills required of her in her employment is a question of fact. Stanley Marlin, supra, at 54 T.C. 565. After carefully considering all the evidence, we hold that the expenses incurred by the petitioner on her trip around the world are not deductible as ordinary and necessary business expenses. Even though the petitioner did not know which grade she would teach when she returned from her trip, both parties have examined her activities on her trip in terms of her employment as a second-grade teacher. The petitioner has not indicated that she expected to teach a grade other than second grade or that she was preparing *192 to teach any other grade. Furthermore, as the petitioner has not shown what courses constituted the curriculum in other grades which she might have taught, she has not shown that her trip activities were directly related to skills required to teach a grade other than second grade. The skills required of the petitioner in her employment as a second-grade teacher did not include the ability to teach courses about foreign countries. It has been stipulated that both prior to and after the petitioner's trip around the world, the second grade curriculum did not 10 include courses dealing with the history, geography, economics, or sociology of foreign countries. Contrary to the petitioner's contention, "multi-culture" studies were not part of the required curriculum during the period from 1964 to 1968, except to the extent that Spanish language patterns were taught. Although teachers, such as the one who visited Japan, might have been encouraged to share unusual experiences with their students they were not required to do so, and such sharing was at the most an incidental part of being a second-grade teacher. We have no doubt that the petitioner was culturally enriched by her trip and *193 that she shared some of her experiences with her students, but such enrichment and sharing does not result in her trip being directly related to the skills required of her as a second-grade teacher. See Stanley Marlin, supra at 54 T.C. 566; cf. Adelson v. United States, 342 F. 2d 332, 335 (C.A. 9, 1965). In her brief, the petitioner relies on Edwin F. Krist, 31 T.C.M. 397, 41 P.-H. Memo. T.C. par. 72,100 (1972), on appeal (C.A. 2, Oct. 20, 1972), in which a first-grade teacher, who taught a social studies course involving the study of foreign countires, took a trip around the world. The Court, after finding that the teacher did not plan the trip as she would have planned 11 a vacation, that much of what she did was in the nature of work to her, that she visited schools and used the ideas which she brought back in her teaching job, and that the textbook she used made specific references to some of the places she visited, held that her primary purpose in taking the trip was to maintain or improve her skills and that the majority of her activities were directly related to her teaching job. We cannot make similar findings *194 in this case. The petitioner began her trip with what she admits was a vacation cruise to New Zealand. Her diary make numerous references to her social life while on the trip, and there is no indication that she planned her trip any differently from a vacation trip. There is also no showing that much of what she did was in the nature of work. Considering the duration of her trip, the amount of time which she spent visiting schools was minimal. Indeed, before leaving on her trip, she had made plans to visit schools only in New Zealand and Australia. The only new teaching methods which she could recall learning involved new games which she saw being played, and the teaching of such games was at most incidental to her employment as a second-grade teacher. Furthermore, the places she visited were not the subject of required courses. We realize that 12 the petitioner did visit Spain and that she taught Spanish language patterns. However, there has been no contention made that the portion of her trip which she spent in Spain aided her in the teaching of Spanish language patterns. In fact, her report to the school district simply states: I spent 3 weeks each in Spain and Portugal, *195 relaxing and enjoying the sunshine and the carefree slow pace of living, enjoying the people and their interesting food dishes * * * Neither the report nor the diary refer to any new knowledge which the petitioner gained concerning Spanish language patterns, and we cannot find that a majority of the petitioner's activities in Spain were directly related to skills required of her as a second-grade teacher. The petitioner further contends that because she was required to take the trip after she signed the leave contract, and because she gave photographic slides and artifacts to the school district, the expenses of her trip are deductible. The petitioner voluntarily applied for sabbatical leave. No rule or regulation of the school board or of the State of California required her to do so. The fact that the petitioner was required to sign a contract in order to receive a salary while she was on sabbatical does not change such result. Nor does giving of slides and artifacts to the school district result in the trip expenses being deductible especially where, as in 13 this case, the petitioner admitted that such giving was not required by the school district. The petitioner also *196 argues that sabbatical leave is not granted unless the school district is satisfied that such leave will benefit the schools or pupiles of the district, and that, therefore, her travel expenses are deductible. We have no doubt that travel may be part of a liberal education and that pupils may incidentally benefit from being told of their teacher's travels. However, the test of the new regulations concerns the direct relationship between the travel and the teacher's required skills. Sec. 1.162-5(d), Income Tax Regs. The cultural enrichment of a teacher and incidental benefits to the students are not sufficient to satisfy that test. Cf. Adelson v. United States, supra.Any personal trip may provide a teacher with such cultural enrichment, but for the expenses of a trip to be deductible as a business expense, the trip must provide more substantial and direct improvement to the person's skills as a teacher. Because we have held that the petitioner's trip was not directly related to the skills required of the petitioner as a second-grade teacher, it necessarily 14 follows that the trip was not primarily taken to maintain or improve such required skills. Stanley Marlin, supra *197 at 54 T.C. 565. Decision will be entered for the respondent.